The **COUNTY OF DAUPHIN**
and **Joseph and Jacalyn**
**Lahr, Appellants**

v.

**CITY OF HARRISBURG, Mayor Linda D. Thompson, Paul P. Wambach, Treasurer, Daniel C. Miller, Controller, Gloria Martin Roberts, President, City Council, Kelly Summerford, Susan Brown Wilson, Brad Koplinski, Wanda D. Williams, Patty Kim, and Eugenia Smith, City Council Members.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2011.

Decided June 10, 2011.

**2.** Due to our holding on this issue, we do not reach Jacobs' final issue.

Daniel L. Sullivan, Camp Hill, and Charles B. Zwally, Harrisburg, for appellants.

Thomas B. Schmidt, III, Harrisburg, for appellees.

BEFORE: LEADBETTER, President Judge, and BUTLER, Judge (P) and FRIEDMAN, Senior Judge.

OPINION BY President Judge LEADBETTER.

The County of Dauphin (County) and taxpayers of the City of Harrisburg (City), Joseph and Jacalyn Lahr, (collectively, County), appeal from an order of the Court of Common Pleas of Dauphin County that sustained preliminary objections of the City, the City's Mayor, Treasurer and Controller, and the City Council members (collectively, the City or City defendants) to the County's first amended complaint and dismissed the County's action without prejudice. The County argues that the specific performance and mandamus relief sought against the City defendants are permitted under Sections 8104 and 8261 of the Local Government Unit Debt Act (Debt Act), 53 Pa.C.S. §§ 8104 and 8261, and the City's guaranty to pay the principal and interest on the notes issued by the Harrisburg Authority (Authority). The City defendants argue that the relief sought by the County and the Lahrs are moot and barred by *lis pendens* and that the Lahrs lacked standing to seek mandamus relief. The trial court's order is affirmed in part and reversed in part.

I.

The County commenced the instant action against the City defendants on November 9, 2009 seeking specific performance and mandamus relief. The County's allegations and the documents attached to the parties' pleadings reveal the following relevant facts.

In 1993, the Authority acquired from the City the Harrisburg Materials, Energy, Recycling and Recovery Facilities (facility) located at 1690 South Cameron Street in the City. After the Authority's acquisition, the City continued to manage and operate the facility. In 2003, the Authority issued bonds to finance the retrofitting of the facility. The bonds were secured by a trust indenture, which named Commerce Bank, now TD Bank, as a trustee. The City, Authority and the trustee entered into an agreement, in which the City agreed to guarantee the Authority's payment of the principal and interest on the bonds in a first guaranty position (2003 City guaranty). In a separate agreement with the Authority and the trustee, the County agreed to guarantee the Authority's payment in a second guaranty position (2003 County guaranty). The Authority,

the City and the County then entered into a reimbursement agreement.

Due to cost overruns and delays, the 2003 retrofit project was not completed as scheduled. In December 2006, the Authority terminated the City's service as the facility's operator and hired a new company to complete the retrofit project. To finance the completion of the project, the Authority issued the following notes: Guaranteed Resource Recovery Facility Limited Obligation Notes, Series C of 2007 with an initial stated value of $20,961,574.40, and Guaranteed Federally Taxable Resource Recovery Facility Limited Obligation Notes, Series D of 2007 with an initial stated value of $9,033,234.45 (2007 notes). The notes were secured by a trust indenture, which designated Commerce Bank, now TD Bank, as a trustee (2007 trust indenture). The notes were scheduled to mature on December 15, 2010, with the maturity values of $23,920,000 and $10,765,000, respectively.

In a guaranty agreement entered into with the Authority and the 2007 trustee, the City agreed to "unconditionally and irrevocably" guarantee the full and prompt payment on the 2007 notes in a first guaranty position "for the benefit of the registered owners" (2007 City guaranty). Section 3.01 of the 2007 City Guaranty; Reproduced Record (R.R.) at 115. In a separate guaranty agreement, the County assumed a second guaranty position (2007 County guaranty). The Authority, the City and the County entered into a reimbursement agreement setting forth their respective rights and responsibilities under the 2007 trust indenture and the 2007 City and County Guaranties.

On October 30, 2009, the trustee notified the City of the deficiency amount of $34,684,998.67 (the 2007 notes' maturity values of $34,685,000 minus $1.33 in the debt service accounts). Upon receipt of the trustee's notice, the City was required to include the deficiency amount in its 2010 fiscal year budget and transfer to the trustee (1) an amount sufficient to permit the trustee to pay the stated values of the notes at maturity by August 15, 2010 and (2) an amount of any deficiency for the succeeding fiscal year by December 15, 2010. Section 3.13(a) of the 2007 City Guaranty; R.R. at 119.

In November 2009, the County commenced the instant action. In a first amended complaint filed in March 2010, the Lahrs were added as plaintiffs, and the City officials' names in the caption were also amended. In Count I, the County sought specific performance to compel the City to include the deficiency amount of $34,684,998.67 on the 2007 notes in the 2010 budget and appropriate and pay that amount. In Count II, the County and the Lahrs alternatively sought mandamus relief against all of the City defendants demanding the same relief sought in Count I. In Count III, the County and the Lahrs sought mandamus relief against the City's Treasurer ordering him to pay the deficiency amount from the first tax monies or other available revenues. The County and the Lahrs also sought attorney's fees and litigation costs against the City defendants.[1]

The County alleged that the City's obligations under the 2007 City Guaranty were specifically enforceable pursuant to Section 8104 of the Debt Act, which gov-

---

1. The former City Mayor, Stephen R. Reed, submitted the 2010 budget, proposing to pay the retrofit project debts with proceeds from sales and leases of the City's assets. The City Council rejected the proposal and did not appropriate any funds for the debt service. The City Council also rejected the subsequent proposal of the newly elected mayor, Linda D. Thompson, to amend the 2010 budget to address the City's debts.

erns a municipality's issuance of bonds, notes and guaranties. Section 8104 provides in relevant part:

> (a) **General rule.**—The local government unit [2] shall, in the ordinance authorizing the issue of bonds or notes or a guaranty or in such bonds or notes, or in the trust indenture securing the same, or in the instrument of guaranty, *covenant with the holders ... of the bonds or notes or guaranteed bonds or notes ...* that the local government unit shall do the following.
>
> (1) Include the amount of the debt service, or the amounts payable in respect of its guaranty ... for each fiscal year in which the sums are payable in its budget for that year.
>
> (2) Appropriate those amounts from its general or specially pledged revenues ... for the payment of the debt service or guaranty.[3]
>
> (3) Duly and punctually pay or cause to be paid from its sinking fund [4] or any other of its revenues or funds the principal of and interest on every bond or note or, ... the amount payable in respect of the guaranty, at the dates and places and in the manner stated in the bonds and in the coupons thereto appertaining or in the guaranty, according to the true intent and meaning thereof.
>
> (b) **Obligation of government unit.**—For budgeting, appropriation and payment in respect of its general obligation [5] bonds or notes, its guaranteed revenue bonds or notes or its guaranty of the bonds or notes of an authority or other local government unit, the local government unit *shall pledge its full faith, credit and taxing power* unless a guaranty is limited to specified revenues of the guarantor.... *The covenant shall be specifically enforceable.* This section does not give any local government unit any taxing power not granted by another provision of law. [Emphasis added.]

An action in mandamus is also available under Section 8261 of the Debt Act, 53 Pa.C.S. § 8261, which provides:

> If the local government unit ... fails or refuses to make adequate provision in its budget for any fiscal year for the sums payable ... or fails to appropriate or pay the moneys necessary in that year for the payment of the amount ... of the maturing principal of and the interest on the bonds or notes or ...

**2.** A "local government unit" includes a county, city, borough, incorporated town and township but excludes an authority. Section 8002(c) of the Debt Act, *as amended*, 53 Pa. C.S. § 8002(c). An authority is governed by Section 5607(d)(12) of the Municipality Authorities Act, *as amended*, 53 Pa.C.S. § 5607(d)(12), which grants authority to "borrow money, make and issue negotiable notes, bonds, refunding bonds and other evidences of indebtedness or obligations."

**3.** As a city of the third class, the City is authorized to levy and collect "[a]n annual tax sufficient to pay interest and principal on any indebtedness incurred pursuant to ... the 'Local Government Unit Debt Act.'" Section 2551.2 of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 37531.2.

**4.** A "sinking fund" is "[t]he special fund created pursuant to section 8221 [of the Debt Act, 53 Pa.C.S. § 8221] (relating to creation of sinking funds and deposits, reserves and surplus funds) for the payment of the principal of and interest on bonds or notes, premium, if any, and assumed taxes, if any, or for the payment of a guaranty." Section 8002(c) of the Debt Act.

**5.** A general obligation is "a bond or note for the payment of which full faith, credit and taxing power of the local government unit is pledged, for the payment of which the local government unit has entered into the required covenant under section 8104...." Section 8002(c) of the Debt Act.

any sinking fund obligation ..., then *at the suit of the holder of any bond, note ... or guaranty ... or of any taxpayer of the local government unit,* the court of common pleas shall, after a hearing ... and upon a finding of such failure or neglect, *by order of mandamus require the treasurer of the local government unit* to pay into the sinking fund for each series of bonds or notes then outstanding, or for each guaranty ... the first tax moneys or other available revenues or moneys thereafter received in the fiscal year by the treasurer.... [Emphasis added.]

The holders of general obligation bonds or notes may also file an action against the local government unit in the court of common pleas to recover the unpaid principal and interest on the bonds and notes. Section 8262 of the Debt Act, 53 Pa.C.S. § 8262.[6]

The City defendants filed preliminary objections to the first amended complaint in the nature of a demurrer. They argued that the specific performance claim was not ripe and that the County had an adequate remedy at law. They further argued that the County failed to identify any ministerial duty of the City to support the request for mandamus relief and that mandamus was not available because the County's claim was based solely on the contract.

Finally, they argued that the Lahrs lacked standing to seek mandamus relief.

By order dated August 6, 2010, a senior judge assigned to the case sustained the preliminary objections and dismissed the County's action without prejudice.[7] He concluded that the County had an adequate remedy at law in an action filed to seek damages for a breach of contract and that the County failed to allege any ministerial duty of the City to support the request for mandamus relief. He further concluded that the County and the Lahrs are not "holders" of the 2007 notes or the 2007 City Guaranty and, therefore, are not entitled to seek mandamus relief under the Debt Act. The County and the Lahrs appealed the trial court's order.[8]

## II.

In reviewing an order sustaining preliminary objections in the nature of a demurrer, this Court must accept all well-pleaded allegations of material facts and inferences deducible therefrom. *Bayada Nurses, Inc. v. Dep't of Labor & Indus.*, 958 A.2d 1050 (Pa.Cmwlth.2008), *aff'd,* 607 Pa. 527, 8 A.3d 866 (2010). A demurrer may be sustained only where it appears with certainty that the law will not permit recovery. *Id.* Any doubt must be resolved in favor of overruling a demurrer. *McMa-*

---

6. On December 15, 2010, the Department of Community and Economic Development issued a determination that the City was financially distressed. The Department's determination was based in part on the City's failure to pay the deficiency amount of $34,684,998.67 on the 2007 notes by August 15, 2010, which meets the criteria of a "municipal financial distress" under Section 201(3) of the Municipalities Financial Recovery Act, Act of July 10, 1987, P.L. 246, *as amended,* 53 P.S. § 11701.201(3). The Department appointed a coordinator to prepare a financial recovery plan to address the City's financial distress.

7. The initially assigned trial judge recused himself and other judges of the Court of Common Pleas of Dauphin County from hearing this case.

8. The County and the Lahrs filed a separate action against the City defendants seeking relief based on the City's failure to perform its obligations under the 2003 City Guaranty. In a separate order issued on the same day, the same judge overruled the City defendants' demurrer to the Lahrs' request for mandamus relief against the City's Treasurer and sustained the demurrer to all other relief sought by the County and the Lahrs.

*hon v. Shea*, 547 Pa. 124, 688 A.2d 1179 (1997). Our review of an order sustaining a demurrer is *de novo* and plenary. *Petty v. Hosp. Serv. Ass'n of Ne. Pa.*, 967 A.2d 439 (Pa.Cmwlth.2009), *appeal granted in part and denied in part*, 606 Pa. 114, 995 A.2d 873 (2010).

■ The County first argues that the trial court erred in dismissing its specific performance claim against the City in Count I. The County cites the 2007 City Guaranty, in which the City pledged full faith, credit and taxing power and covenanted that it would budget, appropriate and pay the deficiency amount on the 2007 notes. The County maintains that in concluding that the County cannot seek specific performance due to an available adequate remedy at law, the trial court ignored the County's rights and the City's obligations imposed by the Debt Act and the 2007 City Guaranty and mischaracterized the remedy sought by the County as a mere claim for damages.[9]

■ Specific performance is an equitable remedy compelling performance of a contract. *DuBois Dutch, LLC v. Guido*, 977 A.2d 1225 (Pa.Cmwlth.2009), *appeal denied*, 606 Pa. 696, 998 A.2d 961 (2010). Where a legal remedy exists, a court is generally divested of equity jurisdiction. *Pentlong Corp. v. GLS Capital, Inc.*, 573 Pa. 34, 820 A.2d 1240 (2003). Where the legal remedy cannot afford full, perfect and complete relief, however, equity extends its jurisdiction "in the furtherance of justice." *Id.* at 43, 820 A.2d at 1245 [quoting *Pa. State Chamber of Commerce v. Torquato*, 386 Pa. 306, 329, 125 A.2d 755, 766 (1956) ]. A legal remedy is inadequate and incomplete when the plaintiff would be required to bring a succession of legal actions "because of the continuing nature of the plaintiff's injury." *Hill v. Nationwide Ins. Co.*, 391 Pa.Super. 184, 570 A.2d 574, 576 (1990).

■ The Debt Act is the exclusive authority for local government units to issue bonds, notes and guaranties and to enter into other agreements to fund local capital projects. *Delaware County v. First Union Corp.*, 605 Pa. 547, 992 A.2d 112 (2010); *County of Northampton v. Dep't of Cmty. & Econ. Dev.*, 573 Pa. 401, 825 A.2d 1245 (2003). The Debt Act also protects those who invest in debts of the local government unit (1) by mandating the local government unit to covenant with the holders of bonds or notes that it will budget, appropriate and duly and punctually pay the amount of the debt service or guaranty, and to pledge its full faith, credit and taxing power, and (2) by making the covenant "specifically enforceable." Section 8104(b). The Debt Act "provides an exclusive and uniform system on the subjects covered by [the Debt Act]." Section 8001(d) of the Debt Act, *as amended*, 53 Pa.C.S. § 8001(d). Where, as here, a remedy is provided or a duty is enjoined by a statute, the directions of the statute must be strictly pursued. Section 1504 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1504; *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 603 Pa. 198, 983 A.2d 652 (2009).

In concluding that the County may not seek specific performance against the City due to an available adequate remedy at law seeking damages for a breach of contract, the trial court misconceived the remedies sought by the County as a mere request for damages and ignored Section 8104(b) of the Debt Act making the City's covenant to budget, appropriate and pay

9. In the reply brief, the County states that it paid the deficiency amount of $34,684,998.67 on December 15, 2010, pursuant to the 2007 County Guaranty. The City defendants did not dispute the County's payment during argument.

the amount due on the notes and guaranty "specifically enforceable." The trial court also disregarded the 2007 City Guaranty granting the County authority to specifically enforce the City's obligations. Section 3.05 of the 2007 City Guaranty provides:

> The City covenants to ... the registered owners ... of the 2007 Notes that the City shall (a) include the amounts payable in respect of this 2007 City Guaranty for each Fiscal Year in which such sums are payable in its budget for that Fiscal Year, and (b) appropriate such amounts from its general revenues for payment to the Trustee of its obligations hereunder, and (c) duly and punctually pay or cause to be paid from any of its revenues or funds such amounts, payable in respect of this 2007 City Guaranty, at the times and in the manner provided for herein, at the designated office of the Trustee.... For such budgeting, appropriation and payment, the City pledges its full faith, credit and taxing power. *As provided in the Debt Act, this covenant shall be enforceable specifically against the City.*

R.R. at 116 (emphasis added).

The City defendants argue, however, that only a "holder" of any bond, note or guaranty has standing to seek specific performance of the covenant under the Debt Act and that the County is not such holder but a "co-surety."[10] City De-

fendants' Brief at 8. In support, they rely on Section 8261 of the Debt Act permitting "the holder" of any bond, note or guaranty or "any taxpayer" of the local government unit to seek mandamus relief against the treasurer, and Section 8262 permitting "the holder" of general obligation bonds and notes, or guaranteed revenue bonds or notes to file an action to recover the amounts due on the bonds and notes.

In order to seek judicial resolution of a controversy, a party must have standing to maintain an action. *Fumo v. City of Philadelphia,* 601 Pa. 322, 972 A.2d 487 (2009). Standing may be conferred either by a statute or by an interest of a party deserving legal protection. *City of Philadelphia, Bd. of Pensions & Ret. v. Clayton,* 987 A.2d 1255, 1260 (Pa.Cmwlth. 2009). Where a statute creates a cause of action and designates who may bring an action, the issue of standing becomes a jurisdictional prerequisite to an action. *Id.*

Unlike Sections 8261 and 8262 of the Debt Act, Section 8104(b) is silent as to who may specifically enforce the covenant made by the local government unit and does not otherwise indicate legislative intent to limit the availability of specific performance to the holders of bonds, notes and guaranties.[11] To accept the City's position that only the holders of bonds, notes or guaranties may seek specific perform-

---

10. The County disputes the City defendants' characterization of the County as a co-surety, stating that the County was a "sub-guarantor." County's Reply Brief at 3. The main difference between a surety and a guarantor is the time that a creditor is allowed to collect upon a debtor's default: the creditor may immediately collect the debt from the surety upon the debtor's default, while the creditor must first attempt to collect the debt from the debtor before demanding a payment by the guarantor. *Reuter v. Citizens & N. Bank,* 410 Pa.Super. 199, 599 A.2d 673 (1991).

11. The object of statutory interpretation is to ascertain and effectuate legislative intent. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *W. Penn Allegheny Health Sys. v. Medical Care Availability & Reduction of Error Fund,* 11 A.3d 598 (Pa.Cmwlth.2010). The best indication of legislative intent is the plain language of the statute. *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.,* 601 Pa. 449, 974 A.2d 1144 (2009).

ance of the City's obligations would result in supplying words omitted by the Legislature in Section 8104(b), in violation of the well-established statutory construction rule that the Court may not insert words when the Legislature failed to do so. *Hearst Television, Inc. v. Norris*, 8 A.3d 420 (Pa.Cmwlth.2010).

Moreover, the County was expressly granted authority to specifically enforce the City's performance of its obligations in Section 3.11 of the 2007 City Guaranty, which provides in relevant part:

> This 2007 City Guaranty is entered into by the City for the benefit of the registered owners of the 2007 Notes and the County, all of whom shall be entitled to enforce performance and observance hereof by the City to the same extent as if they were parties signatory hereto. . . . If the City is in default under this 2007 City Guaranty, *the County shall control all enforcement and remedies so long as the County is not in default under the 2007 County Guaranty.*

R.R. at 119 (emphasis added). Consequently, the County had standing to seek specific performance of the City's obligations not only under Section 8104(b) of the Debt Act but also under the express terms of the 2007 City Guaranty.

### III.

■■■ The County and the Lahrs next challenge the trial court's dismissal of their mandamus claim against all of the City defendants in Count II and against the City Treasurer in Count III. The County and the Lahrs aver that the City's obligations to budget, appropriate and pay the deficiency amount on the 2007 notes are non-discretionary and enforceable in a mandamus action.[12]

Section 8261 of the Debt Act permits (1) *"the holder* of any bond, note or tax anticipation note or coupon or guaranty" or (2) *"any taxpayer of the local government unit"* to seek mandamus relief requiring *the treasurer* of the local government unit to pay the deficiency amount into the sinking fund for each series of bonds or notes or for each guaranty. (Emphasis added.) The term "holder" is not defined in the Debt Act. The County argues that it should be considered to be a holder of the 2007 City Guaranty because it has the right to enforce the City's performance of the obligations under the 2007 City Guaranty. In support, the County cites *Cooke v. Doron*, 215 Pa. 393, 398, 64 A. 595, 597 (1906), construing the term "hold" to include "to enjoy and possess." We reject the County's construction of the term as far-fetched and unreasonable.

To construe the undefined term "holder" in Section 8261, the Court may consult the definition in statutes, regulations or dictionaries for assistance. *Tink–Wig Mountain Lake Forest Prop. Owners Ass'n v. Lackawaxen Twp. Zoning Hearing Bd.*, 986 A.2d 935 (Pa.Cmwlth.2009). Section 1201(b)(21) of the Uniform Commercial Code, 13 Pa.C.S. § 1201(b)(21), defines a "holder" as (i) "the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession"; (ii) "the person in possession of a negotia-

---

12. A mandamus action is an action at law seeking an extraordinary remedy of compelling an official's performance of a ministerial duty. *Rosario v. Beard*, 920 A.2d 931 (Pa.Cmwlth.2007); *Parents against Abuse in Sch. v. Williamsport Area Sch. Dist.*, 140 Pa. Cmwlth. 559, 594 A.2d 796 (1991). A writ of mandamus may be issued only where there is a clear right in the plaintiff, a corresponding duty in the defendant, and lack of any other appropriate and adequate remedy. *Warminster Fiberglass Co. v. Upper Southampton Twp.*, 939 A.2d 441 (Pa.Cmwlth.2007).

ble tangible document of title ...”; or (iii) “the person in control of a negotiable electronic document of title.” Black's Law Dictionary 749 (8th ed.2004) similarly defines the term as “[a] person who has legal possession of a negotiable instrument and is entitled to receive payment on it” or “[a] person with legal possession of a document of title or an investment security.”

 The County is not in possession of any note, bond or guaranty. The 2007 notes and the 2007 City Guaranty were not issued to the County. Rather, the County guaranteed the Authority's payment on the 2007 notes. Hence, the County is not a “holder” permitted to seek mandamus relief under Section 8261 of the Debt Act. Only the Lahrs, as taxpayers, have standing to seek mandamus relief only against the City Treasurer to compel him to pay the deficiency amount into the sinking fund. Citing *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), the City defendants nonetheless argue that the Lahrs' status as taxpayers alone is insufficient to establish standing and that the Lahrs must demonstrate that they have a substantial, direct and immediate interest in the outcome of this action, which is greater than the common interest of all citizens. Section 8261, however, permits “any taxpayer” to bring a mandamus action and does not impose any further requirement.

### IV.

 The City defendants argue that the County's specific performance and mandamus claims are moot because the 2007 notes' maturity date has passed, the City is now operating under the 2011 budget, and the deficiency amount has been paid by the County. Under the mootness doctrine, an actual case or controversy must exist at all stages of review. *Pub. Defender's Office of Venango County v.*

*Venango County Court of Common Pleas*, 586 Pa. 317, 893 A.2d 1275 (2006).

The City defendants' mootness argument is without merit. Section 3.05 of the 2007 City Guaranty provides:

> At any time when payments are required to be made by the City hereunder, to the extent that sufficient money shall not be available in the City's then current budget, and if the City shall be unable to incur debt lawfully in the current Fiscal Year for the purpose of paying such Debt Service ... or otherwise to satisfy its obligations hereunder, *the City shall include any amounts so payable in its budget for the next succeeding Fiscal Year and shall appropriate such amounts to the payment of such obligations and duly and punctually shall pay or shall cause to be paid the obligations ...*, and for such budgeting, appropriation and payment the City does pledge its full faith, credit and taxing power. As provided in the Debt Act, this covenant shall be enforceable specifically against the City.

R.R. at 116a (emphasis added). The City failed to include the amount payable on the 2007 notes in its budget for 2010 and the subsequent fiscal year and failed to appropriate and pay such amount, and the City's failure to perform its obligations under the Debt Act and the 2007 City Guaranty continues. The County's payment of the debt service amount under the 2007 County Guaranty, therefore, has not ended the controversy between the City and the County and thus has not rendered the County's claims moot.

 The City defendants further argue that the Lahrs' mandamus action against the City Treasurer is barred by the pendency of the separate action filed by the County and the Lahrs against the Authority and the City defendants assert-

ing claims related to the 2003 bond and the 2003 City Guaranty. The City defendants did not raise the defense of *lis pendens* in their preliminary objections when Pa. R.C.P. No. 1028(b) requires all preliminary objections to "be raised at one time." A party waives all defenses and objections "which are not presented either by preliminary objection, answer or reply," except certain defenses inapplicable to this matter. Pa. R.C.P. No. 1032(a). Having failed to include *lis pendens* in their preliminary objections, the City defendants may not raise it later in an appeal to this Court.[13]

Accordingly, the Court reverses the trial court's order dismissing the County's specific performance claim against the City in Count I of the first amended complaint and dismissing the mandamus relief sought by the Lahrs against the City Treasurer in Count III. The court's order dismissing Count II and the mandamus relief sought by the County against the City Treasurer in Count III is affirmed. This matter is remanded for further proceedings.

### ORDER

AND NOW, this 10th day of June, 2011, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter sustaining the preliminary objections and dismissing the specific performance claim of the County of Dauphin against the City of Harrisburg in Count I of the first amended complaint, and dismissing the mandamus relief sought by

Joseph and Jacalyn Lahr against the City Treasurer in Count III is REVERSED. The court's order dismissing Count II and the mandamus relief sought by the County against the City Treasurer in Count III is AFFIRMED. This matter is remanded for further proceedings.

Jurisdiction relinquished.

---

**13.** In any event, the City defendants' *lis pendens* argument lacks merit. The purpose of the *lis pendens* doctrine is to protect a defendant from being forced to defend multiple suits on the same cause of action at the same time. *Feldman v. Lafayette Green Condo. Ass'n*, 806 A.2d 497 (Pa.Cmwlth.2002). The doctrine applies where the prior action and the subsequent action involve the same par-

ties, the same cause of action and the same relief. *Id.* Here, the facts giving rise to the cause of action in each action is different. The County's claims in this action are based on the 2007 notes and the 2007 City Guaranty, while the other pending action involves the 2003 bonds and the 2003 City Guaranty. Because the causes of actions in the two actions are different, *lis pendens* does not apply.